911 F.2d 725
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John H. TRAYNHAM, Plaintiff-Appellant,
v.
The KENDALL COMPANY, Defendant-Appellee.
 No. 89-1823.
 United States Court of Appeals, Fourth Circuit.
 Argued June 6, 1990.
Decided July 20, 1990.
Rehearing and Rehearing In Banc Denied Aug. 20, 1990.
 
 Appeal from the United States District Court for the District of South Carolina, at Anderson. G. Ross Anderson, Jr., District Judge. (CA-89-549-8-3)
 Hal Jerome Warlick, Warlick Law Office, Easley, S.C., for appellant.
 H. Grady Kirven, Watkins, Vandiver, Kirven, Gable & Gray, Anderson, S.C., for appellee.
 D.S.C.
 AFFIRMED.
 Before WIDENER and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 CHAPMAN, Circuit Judge:
 
 
 1
 John H. Traynham (Traynham) brought an action against The Kendall Company (the Company), seeking pension benefits under the Company's pension plan. The district court awarded Traynham pension benefits on the basis of two years of service, and Traynham appeals. We affirm.
 
 
 2
 * Born in 1912, Traynham was employed by the Company (or its predecessor corporations) as an hourly employee from November 1944 to August 10, 1967. On November 1, 1951, the Company adopted a pension plan providing certain retirement benefits for employees at its Pelzer, S.C., plant, where Traynham worked. On August 10, 1967, Traynham, aged 54 and with over 22 years of service, was incarcerated in the Anderson County, S.C., stockade, because of, according to Traynham, his co-signature on an unpaid debt of his son. Four days before, Traynham had requested a sixty-day leave of absence from the Company. However, H.D. Adams, Personnel Manager of the Company's Pelzer Plant, wrote Traynham on August 11, 1967, explaining that his absence under the circumstances would not be excused, but suggesting that "[w]hen you [Traynham] are available for work again, come by the Personnel Office and see me [Adams] if you are interested in a job." Traynham returned to work on September 21, 1967, and continued to work until June 4, 1975, when he voluntarily quit at the age of 62. On December 29, 1975, he returned again until March 13, 1978, when he retired as a result of poor health at the age of 66. At no point has Traynham received any pension benefits from the Company.
 
 
 3
 After presenting a written demand for benefits to the Company in December 1988, Traynham brought this action in February 1989 for wrongfully withheld benefits. The district court, reviewing de novo a report of findings and conclusions filed by the Administrator of the Pension Plan, held that Traynham's absences in 1967 and 1975 each constituted a "break in service" under the terms of the Plan. The court concluded that Traynham was entitled to pension benefits only for the two years of vested service after 1975. However, because of the six-year statute of limitations contained in 29 U.S.C. Sec. 1113, the court limited Traynham's recovery to pension benefits from January 1, 1982, through December 1988, amounting to $2,160.
 
 II
 
 4
 We start first with the Company's 1951 plan. Section IV of the 1951 plan made eligible for participation in the plan any employee "whose credited service commences at least fifteen (15) years prior to his normal retirement date." However, Subsection 1 of Section XI provided that
 
 
 5
 [a]ny interruption of service constituting a break in service as provided under Section II(6), other than by retirement as provided herein, shall be considered termination of employment and termination of the employee's participation in the plan. No right to benefits shall arise until actual retirement and no employee whose employment has been so terminated prior to actual retirement shall have any right to benefits, or right to or interest in any contributions which may be made by the Company, under the plan.
 
 
 6
 Section II(6) defined a "break in service" as "any interruption of service due to: ... (vi) the employee's failure to report for work for five (5) days without written leave of absence." We agree with the district court that Traynham's absences without leave for 42 days in 1967 and for over six months in 1975 unambiguously constituted "break(s) in service" under Section II(6), thereby terminating Traynham's participation in the pension plan as of the date of the break in service.
 
 
 7
 Traynham claims that the district court should have applied the Company's 1972 amendment to the 1951 plan. This amendment substitutes the following for Subsection 1 of Section XI of the 1951 plan:
 
 
 8
 Any interruption of service constituting a break in service as provided under Section II (6), other than by retirement as provided herein, shall be considered termination of employment. Each eligible employee who has a termination of employment at any time after he has completed at least ten (10) years of credited service and attained his forty-fifth (45th) birthday and prior to his normal retirement date shall be entitled to receive a retirement benefit commencing on his normal retirement date, ... but based only upon his credited service to his termination of employment.
 
 
 9
 This amendment does not change the definition of "break in service" contained in the 1951 plan, and Traynham's 1967 and 1975 absences remain "break(s) in service."
 
 
 10
 However, the 1972 amendment does provide for "full vesting upon attainment of at least age 45 and the completion of at least 10 years of service." Stating that he had over 22 years of credited service and was 54 years old at the time of the 1967 interruption, Traynham claims that his right to a pension was vested at that time. However, the 1972 amendment explicitly provides that the 1972 amendment is effective on July 1, 1972, and this can only mean that any employee who reaches the age of 45 with ten years of service after July 1, 1972, will have a vested right to benefits under the plan. The language of the pension plan does not create vested rights in any employee who may have satisfied these requirements at any time prior to July 1, 1972. As a result, Traynham's right to benefits was not vested at the time of his break in service in 1967, and he did not have vested rights at his 1975 break in service, because he had completed less than ten years of credited service at the time.
 
 
 11
 Alternatively, Traynham argues that the district court should have applied the plan's 1976 amendments. These amendments struck out all provisions of the 1951 plan, as amended in 1972, and created a new single plan document: the 1976 plan. This plan expressly applied to employees who retired on or after January 1, 1976. The 1976 plan provided that a "break in service" means "a period of 12-consecutive months during which an employee has not completed more than 500 Hours of Service." Under this definition, it appears that neither of Traynham's absences constitutes a "break in service." However, assuming that the 1976 plan applies, the 1976 plan does not extend its new definition of "break in service" to any interruptions prior to the 1976 plan's effective date. Specifically, Section 2.32 of Article 2 of the 1976 plan states that
 
 
 12
 (a) any Year of Service for Vesting prior to the Effective Date will be disregarded if such Year of Service for Vesting would have been disregarded under the rules of the Prior Plan relating to breaks in service, ... as such rules were in effect from time to time under the Prior Plan.
 
 
 13
 This provision clearly requires that Traynham's 1967 and 1975 interruptions are governed by the definition of "break in service" found in the 1951 plan, not the 1976 plan. As a result, Traynham's contention that the 1976 plan is applicable does not help him.
 
 III
 
 14
 Thus, we find no merit to Traynham's arguments, and we affirm the district court's ruling granting him benefits for only two years of credited service.
 
 
 15
 AFFIRMED.
 
 
 16
 WIDENER, J., and BUTZNER, S.J., Joined.